UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ALBERTA T.[1],<br>    *Plaintiff,*<br><br>v.<br><br>MARTIN O'MALLEY, Commissioner of Social Security[2],<br>    *Defendant.* | No. 3:23-cv-00754 (VAB) |

**RULING AND ORDER ON MOTION TO REVERSE THE DECISION OF THE COMMISSIONER AND MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER**

Alberta T. ("Plaintiff" or "Claimant") has filed an administrative appeal under 42 U.S.C. §§ 405(g) and 1383(c)(3) against Kilolo Kijakazi, Acting Commissioner of Social Security ("Commissioner"), seeking to reverse the decision of the Social Security Administration ("SSA") denying her claims for Title II Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income ("SSI"), or, in the alternative, to remand the case for a new hearing. The Commissioner has moved to affirm the decision.

For the reasons explained below, Alberta T.'s motion to remand for a new hearing is **GRANTED** and the Commissioner's motion is **DENIED**. The decision of the Commissioner is

---

[1] In opinions issued in cases filed under § 405(g) of the Social Security Act, 42 U.S.C. § 405(g), this Court will identify and reference any non-government party solely by first name and last initial in order to protect the privacy interests of social security litigants while maintaining public access to judicial records. *See* Standing Order – Social Security Cases (D. Conn. Jan. 8, 2021).

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Under Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley should be substituted for Kilolo Kijakazi as the Defendant in this suit. No further action need be taken. 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

1

**VACATED** and **REMANDED** for rehearing and further proceedings in accordance with this Ruling and Order.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

   A.  **Factual Allegations**

      1.  **Medical History**

In 1993, Alberta T. was allegedly diagnosed with fibromyalgia and rheumatoid arthritis by her family doctor at the age of fourteen. Social Security Tr. at 848, ECF No. 12 ("Tr.").

For the purposes of her DIB and SSI applications, her alleged onset of disability is January 1, 2020. Plaintiff's Memo. in Support of Mot. to Reverse the Decision of the Commissioner, ECF No. 16-1, at 2–3 (Oct. 10, 2023) ("Plaintiff's Memo"). In her applications for DIB and SSI, Alberta T. alleged having Post-Traumatic Stress Disorder ("PTSD"), a leaning disorder, fibromyalgia, rheumatoid arthritis, and high blood pressure. Tr. at 61. She has additionally had a years-long substance abuse disorder, which allegedly began when she used opiates to manage chronic pain caused by her fibromyalgia and arthritis. Plaintiff's Memo at 3–4.

On January 16, 2020, Alberta T. visited Dr. Jane Olsen, with concerns of swelling and stiffness in her hands and feet. Tr. at 856–59. Dr. Olsen reported that Alberta T. was taking 800mg of gabapentin to manage pain associated with her previous diagnosis of arthritis. *Id.* at 858. Alberta T. was additionally referred for behavioral health concerns at this appointment. *Id.* at 859.

On February 5, 2020, Alberta T. completed intake at a suboxone clinic to help manage her substance use disorder. The records note that she is a "young woman with rheumatoid arthritis and fibromyalgia," had had an "elevated CCP in the past"—a test used to diagnose rheumatoid arthritis ("RA")—and that she was referred to a rheumatologist for further

assessment. *Id.* at 850. The appointment notes additionally state that it was "difficult to tease out if she is experiencing withdrawal symptoms (would be unusual on 16mg of buprenorphine daily over this chronic period of time) or if she is experiencing chronic pain from RA." *Id* at 851.

On February 19, 2020, Alberta T. reported to the suboxone clinic for a routine follow-up appointment. *Id* at 842. The doctor noted that she had a "weakly positive CCP," "likely ha[d] chronic pain secondary to RA" and "need[ed] to followup with [the] rheum[otologist]." *Id* at 843.

On February 26, 2020, Alberta T. attended a behavioral health visit with APRN Regina Daniels. *Id* at 866. She reported that she had persistent pain and discomfort despite taking gabapentin, and that the chronic pain contributed to her depression and anxiety as "she [was] not able to do the things she used to do ie work or activity." *Id* at 867.

On March 4, 2020, Alberta T. attended a routine follow-up at the suboxone clinic. She reported that she had been unable to visit the rheumatologist due to lack of transportation. *Id* at 837. Alberta T. additionally noted that she had lower back pain and abdominal pain. *Id*. The doctor noted that she had "mild tenderness to palpitation over lumbar paraspinal muscles." *Id*. at 839.

On April 29, 2020, Alberta T. requested lab work for rheumatoid arthritis at a routine suboxone clinic follow-up. *Id.* at 822. Lab tests for cyclic citrullinated peptide ("CCP") and rheumatoid factor were ordered. *Id.* at 824.

Between May 2020 and July 2020, Alberta T. failed to complete the lab work ordered to assess her arthritis and did not follow-up on the rheumatology referral. *See id*. at 803, 809, 815, 819. Her last appointment at the suboxone clinic is stated to be July 16, 2020. *Id*. at 798.

On May 5, 2021, Alberta T. reported to Dr. Xi Teng for continued substance use treatment with suboxone. *Id.* at 1049. Dr. Teng ordered a variety of tests including lab work for rheumatoid arthritis. *Id.* at 1049–50.

On May 19, 2021, Alberta T. received the results of that lab work. *Id.* at 1044–47. Her CCP and rheumatoid factor tests were completed. *Id.* at 1045. However, the records do not provide an interpretation for her results; instead, they state "see note" and no note is provided. *Id.*

### 2. Activities of Daily Life and Hearing Testimony

At the hearing, Alberta T. testified that her arthritis and chronic pain impacted her ability to work and complete activities of daily life. She stated that she found it difficult to complete her job as a monitor on the school bus:

> It's very hard to lift the children because I have arthritis in my spine. So, when I'm in the back—like I sit in the back of the school bus and it's like—it takes a lot on my body because I'm bouncing around on the school bus, like you're going over bumps, and it just takes a toll on my body.

*Id.* at 40. She testified that she worked four and a half hours a day and called out sick for seven days of work between August 30, 2021 and the hearing on December 14, 2021. *Id.* at 41.

Alberta T. additionally testified that she was unable to do housework "like [she] used to" due to swelling in her hands, feet, and legs. *Id.* When asked for further clarification, she stated that she could do chores such as sweeping and cleaning the bathroom, but that she would need to sit down intermittently for roughly 20-minutes breaks due to pain. *Id.* at 42. Alberta T. stated that she does the cooking for her and her son who lives with her, but that her son does the laundry for both of them. *Id.* at 43–44. Alberta T. also stated that she goes grocery shopping once a month because it is "hard because of her feet" and that when she goes, she is unable to wear sneakers due to swelling, and must wear "slides." *Id.* at 43.

Regarding her learning disability, Alberta T. testified that her reading level is around the 4th or 5th grade, and that she finds it difficult to write and spell. *Id.* at 45. She also testified that she found it difficult to help her son with schoolwork, but that she could manage her own finances. *Id.* at 46.

### 3. Medical Opinions

On August 8, 2020, Alberta T. was examined by Dr. Jacob Kogan, the DDS physician. *Id.* at 924. Dr. Kogan additionally reviewed Alberta T.'s medical records. *Id.* Regarding musculoskeletal presentation, Dr. Kogan found:

> The claimant reports tenderness to palpitation involving the entire posterior torso and all four extremities diffusely. There is no synovitis involving any of the joints of the upper and lower extremities bilaterally. There is full range of motion at the cervical spine, lumbar spine and throughout all the joints of the upper and lower extremities bilaterally.

*Id.* at 926. Neurologically, Dr. Kogan found:

> Mental status: Alert and oriented to time and place. Normal expressive and receptive language. The claimant is a good historian. The claimant recalls the date of birth and social security number. The claimant registers 3/3 objects and recalls 3/3 objects at 3 minutes. The claimant provides a 6 digit forward memory span. She performs small digit addition, subtraction, and multiplication successfully. She cannot perform small digit division. She reads slowly having difficulty with larger and less common words. The claimant is anxious, there is no pressured speech, and thought process is organized.
> Cranial nerves: II through XII intact.
> Motor: strength is 5/5 in the upper and lower extremities bilaterally, fine finger movements are normal bilaterally. There is normal muscle bulk and tone in the upper and lower extremities bilaterally.
> Sensory: Intact to light touch and pin prick in the upper and lower extremities bilaterally
> Coordination: No dysmetria in the upper or lower extremities bilaterally.
> Deep tendon reflexes: 2+ at the bilateral biceps, triceps, brachioradialis, patella and achilles.

> Gait: independent gait is normal with normal bilateral step length, speed and stride without antalgia, plegia, ataxia or instability.
> Tandem: performed successfully and stably

*Id.*

Dr. Kogan concluded with the impression that Alberta T. had "general musculoskeletal pain and prior reported diagnoses of fibromyalgia and rheumatoid arthritis[.]" *Id.* He also stated that "there are no range of motion deficits and no neurological deficits that limit sitting, standing, walking, ending, lifting, carrying, reaching or finger manipulations"; but that the "above activities are mildly limited due to symptoms of generalized musculoskeletal pain." *Id.*

On November 10, 2020, Alberta T. was given a psychological examination by Dr. Patrick Russolillo. *Id.* at 930. Dr. Russolillo conducted psychological testing and reviewed Alberta T.'s medical records. *Id.* at 930. On the Weschler Adult Intelligence Scale-IV ("WAIS"), Alberta T. had an IQ of 71, in the "Borderline" Range. *Id.* at 933. She received a score of 63 on the WAIS verbal comprehension index which is in the "extremely low" range. *Id.* On memory and cognition tests, Dr. Russolillo found that Alberta T.'s scores were "consistent with significant information processing deficits affecting immediate and delayed recall." *Id.* at 931. Dr. Russolillo concluded:

> The above findings indicate that she functions within the borderline range of intelligence and delayed recall. Relative strengths are noted with non-verbal reasoning and processing speed. She indicated that she has trouble with standing and completing basic household chores because [of] pain in her legs and hands. She also has difficulty with washing and dressing.

*Id.* at 934. Dr. Russolillo additionally stated that Alberta T. may have deficits in the work-related functions of "mak[ing] judgements on simple work-related decisions"; "understand[ing] and remember[ing] complex instructions"; and "carr[ying] out complex instructions." *Id.* at 935.

6

On July 20, 2020, Dr. Olsen filled out a DDS questionnaire providing her opinion on Alberta T. as a treating physician. *Id.* at 798. She stated that Alberta T.'s judgment and insight were "intact." *Id.* at 799. She rated Alberta T. as mostly average functioning in the areas of Activities of Daily Living, Social Interactions, and Task Performance. *Id.* at 800–01. In the specific skills of "[u]sing appropriate coping skills" and "[h]andling frustration appropriately," Dr. Olsen rated Alberta T. as "[s]ometimes a problem, or [r]educed ability." *Id.* at 800. This report was co-signed by Dr. Ghaly, a preceptor to Dr. Olsen. *Id.* at 802.

### 4. Application Process and ALJ Decision

On June 17, 2020, Alberta T. filed applications for DIB and SSI, alleging impairments of PTSD, a learning disability, fibromyalgia, rheumatoid arthritis, and high blood pressure. *See id.* at 15, 61. Her applications were denied both initially and upon reconsideration. *Id.* at 15.

On August 4, 2021, Alberta T. requested a hearing to review her applications. *Id.* at 135. She appeared before Administrative Law Judge John Noel ("the ALJ") on December 14, 2021. *Id.* at 15.

To determine whether a claimant is disabled, the ALJ must follow a five-step evaluation process, assessing

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008); 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v)).

7

At Step One, the ALJ found that Alberta T. had not engaged in substantial gainful activity since the alleged onset date of her disability, as her earnings "did not rise to the level for a presumption of substantial gainful activity." *Id.* at 17.

At Step Two, the ALJ found that Alberta T. had the severe impairments of post-traumatic stress disorder ("PTSD") and a learning disorder. *Id.* at 18. The ALJ found that Alberta T. had no other medically determinable impairments.[3] *Id.*

At Step Three, the ALJ found that Alberta T. did not have an impairment or combination of impairments that met or equaled the severity of a listed impairment. *Id*. at 19.

At Step Four, the ALJ found that Alberta T. had a residual functional capacity ("RFC") to "perform a full range of work at all exertional levels but with the following nonexertional limits: can perform simple, routine and repetitive tasks but not a production rate, can use judgment limited to making simple, work related decisions, [and can] deal with routine changes in the work setting." *Id.* at 24. The ALJ determined that Alberta T. had no past relevant work. *Id*. at 26.

Finally, the ALJ found that there are jobs that exist in significant numbers in the national economy that Alberta T. could perform, specifically a housekeeper, advertising material distributer, and photocopying machine operator. *Id.* ALJ Noel thus denied Alberta T.'s DIB and SSI claims. *Id.* at 12.

On February 28, 2022, Alberta T. requested review of the ALJ decision. Plaintiff's Memo. at 2. The Appeals Council denied Alberta T.'s request for review on Apil 7, 2023. *Id.* Alberta T. then appealed to this Court. *Id.*; Compl., ECF No. 1 (June 9, 2023) ("Compl.").

### B. Procedural History

---

[3] ALJ Noel writes, "The record does not establish that fibromyalgia and degenerative disc disease are medically determinable impairments." Tr. at 18. In her applications, Alberta T. does not represent that she has degenerative disc disease. *See id.* at 61. The Court discusses this further in Part III.A.2. of this Order.

On October 10, 2023 Alberta T., filed a motion seeking the reversal of the decision of the Commissioner and a remand for a new hearing if appropriate. Mot. to Reverse Decision of the Comm'r, ECF No. 16 (Oct. 10, 2023).

On December 8, 2023, the Commissioner filed a motion to affirm the decision of the Commissioner. Mot. to Affirm the Decision of the Comm'r, ECF No. 21 (Dec. 8, 2023); Memo. in Supp. of Mot. to Affirm the Decision of the Comm'r, ECF No. 21-1 ("Comm'r's Memo.").

## II.   STANDARD OF REVIEW

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on the correct legal standard." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (citing 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla." *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 447 (2d Cir. 2012) (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)). It is generally "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brown v. Apfel*, 174 F.3d 59, 61 (2d Cir. 1999) (internal quotation marks omitted) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). To determine "whether the agency's findings are supported by substantial evidence, 'the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)).

9

When "the Commissioner's decision applies the correct legal principles and is supported by substantial evidence, that decision will be sustained." *Kumar v. Berryhill*, No. 3:16-cv-1196 (VLB), 2017 WL 4273093, at *4 (D. Conn. Sept. 26, 2017) (citing *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982)). On the other hand, "[a]n ALJ's failure to apply the correct legal standard constitutes reversible error if that failure might have affected the disposition of the case." *Lopez v. Berryhill*, 448 F. Supp. 3d 328, 341 (S.D.N.Y. 2020) (citing *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008)). A court generally need not remand a case if the ALJ only committed harmless error, such that "application of the correct legal principles to the record could lead only to the same conclusion." *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (alteration omitted) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

## III.   DISCUSSION

Alberta T. raises three claims: First, that the ALJ "cherry picked" evidence leading to finding that Alberta T.'s alleged fibromyalgia and arthritis were not medically determinable impairments in Step Two. Second, that the ALJ improperly weighed the opinions of physicians when considering whether Alberta T.'s learning disability meets or equals the listed impairments in Step Three. And third, that the ALJ erroneously found that Alberta T. had no exertional limits and minimal non-exertional limits when drafting her RFC.

The Court considers each argument in turn.

### A.   Assessment of Conflicting Evidence

Alberta T. argues that the ALJ ignored evidence that favored a finding that Alberta T. was disabled. Plaintiff's Memo. at 14. Specifically, Alberta T. argues that ALJ Noel did not consider Alberta T.'s CCP test when assessing her arthritis and that he ignored Alberta T.'s self-reported symptoms when considering both her fibromyalgia and arthritis. *Id.* at 15–16.

The Commissioner argues that the ALJ's decisions are supported by substantial evidence. Comm'r's Memo. at 2. First, the Commissioner argues that Alberta T. failed to demonstrate that she meets the Social Security Administration's ("SSA") requirements for a diagnosis of fibromyalgia. *Id.* at 4–5. Second, the Commissioner argues that the ALJ's reliance on Dr. Kogan's report is sufficient to demonstrate that "Plaintiff's degenerative disc disease" is not a medically determinable impairment.[4] *Id.* at 3–4.

The Court agrees with the Commissioner, regarding the finding that the SSA standards for finding fibromyalgia to be a medically determinable impairment are not met. The Court agrees with Alberta T., however, that the ALJ did not meet the substantial evidence standard when concluding that Alberta T.'s arthritis is not a medically determinable impairment.

ALJ decisions are reviewed "to determine whether they are supported by substantial evidence." *Snell v. Apfel*, 177 F.3d 128, 132 (citing 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991)). A reviewing court must "defer to the Commissioner's resolution of conflicting evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012). However, "[t]o be supported by substantial evidence, the ALJ's decision must be based on consideration 'of all evidence available in [the claimant]'s case record.'" *Telesco v. Comm'r of Soc. Sec.*, 577 F. Supp. 3d 336, 341 (S.D.N.Y. 2021) (quoting 42 U.S.C. § 423(d)(5)(B)). While there is no requirement that "every conflict in the record be reconciled by the ALJ, . . . the crucial factors in any determination must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d. Cir. 1984).

---

[4] As stated throughout this Order, Alberta T. does not claim to have degenerative disc disease.

11

When weighing conflicting evidence, an ALJ cannot "'cherry pick' portions of the records to support the ALJ's findings." *Friend v. Saul*, No. 3:19-cv-00211 (KAD), 2020 WL 2475642, at *3 (D. Conn. May 13, 2020); *see also Telesco*, 577 F. Supp. 3d, at 357 ("[A]n ALJ may not selectively favor medical opinions, or portions of an opinion, that support his opinion and ignore opinion or facts that do not."); *Dowling v. Comm'r of Soc. Sec.*, No. 5:14-cv-0786 (GTS/ESH), 2015 WL 5512408, at *11 (N.D.N.Y. Sept. 15, 2015) ("The fundamental deficiency involved with 'cherry picking' is that is suggests a serious misreading of evidence, or a failure to comply with the requirement that all evidence is taken into account[.]" (citing *Genier v. Astrue,* 606 F.3d 46, 50 (2d Cir. 2010)). If an ALJ fails to consider relevant probative evidence, the Court can remand for further proceedings. *See Kohler*, 46 F.3d at 269 ("We have remanded in other cases where the ALJ has similarly failed to consider relevant probative evidence." (citing *Lopez v. Sec. of Dept. of Health and Human Servs.,* 728 F.2d 148, 150 (2d Cir. 1984)).

### 1. Fibromyalgia

Courts "have recognized that fibromyalgia is a disabling impairment and that there are no objective tests which can determine the disease." *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003) (internal quotations and citations omitted). Instead, diagnoses are generally made "based primarily, if not entirely, on subjective complaints of pain." *Johnston v. Barnhart*, 378 F. Supp. 2d 274, 281 (W.D.N.Y. 2005). To address this difficulty with assessing fibromyalgia diagnoses, the Social Security Administration has developed a standard "to establish that a person has a medically determinable impairment of fibromyalgia." Social Security Ruling, 12-2P, 2012 WL 3104869 ("SSR 12-2P").

This standard sets out two tests to determine whether an applicant has a medically determinable impairment of fibromyalgia. *Id*. The first requires an applicant to show that the has

"[a] history of widespread pain," "[a]t least 11 positive tender points on physical examination," and "[e]vidence that other disorders that could cause the symptoms or signs were excluded." *Id.* The second requires "[a] history of widespread pain," "[r]epeated manifestations of six or more [fibromyalgia] symptoms, signs, or co-occuring conditions," and "[e]vidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded." *Id.* A finding that fibromyalgia is a medically determinable impairment can rely on either of these two tests. *Id.*

The ALJ applied the tests and found that "the claimant [did] not provide[] evidence that other disorders, with similar symptoms to fibromyalgia, ha[d] been excluded," a requirement of either test. Tr. at 19; *see, e.g., id.* at 806 (Dr. Olsen's notes stating "Chronic polyarthralgia: Fibromylagia vs RA?"). Thus, he concluded that there was insufficient evidence for a finding of fibromyalgia as a medically determinable impairment. *Id.* at 19. The ALJ's straightforward application of SSR 12-2P constitutes substantial evidence that Alberta T. does not have fibromyalgia as a medically determinable impairment.

Alberta T. also argues that the ALJ failed to consider her symptoms of fibromyalgia under Social Security Ruling 16-3p ("SSR 16-3p"), which requires assessment of "the individual's symptoms, including pain." SSR 16-3p, 2017 WL 5180304; *see* Plaintiff's Memo. at 15. However, as the Commissioner argues, the requirements of SSR 16-3p, are only operative after there has been a finding of a medically determinable impairment. Comm'r's Memo. at 6. SSR 16-3p directs the use of a two-step process for assessing symptoms: first "we determine whether the individual has a medically determinable impairment"; and then "we evaluate the intensity and persistence of a individual's symptoms." SSR 16-3p. Because the ALJ did not find

fibromyalgia to be a medially determinable impairment, he did not err in failing to consider.

Alberta T.'s symptoms.

### 2. Rheumatoid Arthritis

The ALJ does not make an explicit determination as to Alberta T.'s rheumatoid arthritis. Instead, he concludes "the record does not establish that fibromyalgia and degenerative disc disease are medically determinable impairments." Tr. at 18. This alone may not require remand if the rest of his analysis allowed the Court "to glean the rationale of [the] ALJ's decision." *Mongeur*, 22 F.2d at 1040; *see Nieves v. Colvin*, No. 3:15-cv-01842 (JCH), 2016 WL 7489041, at *5 (D. Conn. Dec. 30, 2016) ("Although the ALJ normally 'should set forth a sufficient rationale,' . . . the court can "look to other portions of the ALJ's decision and to credible evidence in finding that his determination was supported by substantial evidence." (quoting *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982))). But the record and ALJ decision are not sufficient for the Court to conclude that the ALJ's decision is supported by substantial evidence.

After discussing Alberta T.'s fibromyalgia in Step Two, the ALJ moves on to Alberta T.'s back problems:

> Regarding the claimant's back, a March 25, 2016 x-ray of the claimant's lumbar spine showed a mild dextroscoliosis curve of the lumbar spine, which could be positional or scoliosis (Exhibit 2F, page 1). Given this and seeing no other imaging, it is not clear if she has mild scoliosis or not.

Tr. at 19.

While Alberta T. does allege back pain due to fibromyalgia and arthritis, she does not allege that scoliosis is a medically determinable impairment. Additionally, Alberta T.'s complaints related to rheumatoid arthritis extend beyond back pain. *See, e.g., id.* at 858 (reporting "foot and hand swelling and stiffness" to Dr. Olsen); *id.* at 41 (testifying that she cannot do housework because "the arthritis has gotten a little bad" causing her "hand to swell up

at times[, her] feet swell up[, and] her legs swell up). The ALJ states that the "record does not support the claimant's allegations," *id.* at 18; yet the discussion of Alberta T.'s back x-ray does not contradict any of her complaints regarding her hands, feet, and legs.

Furthermore, the ALJ does not mention Alberta T.'s two CCP tests, at least one of which was positive,[5] *see id.* at 817, which Plaintiff argues supports her diagnosis of rheumatoid arthritis, Plaintiff's Memo at 16. While the CCP test results may not be conclusive, they are probative and relevant to assessing Alberta T.'s rheumatoid arthritis because the determination of medically determinable impairments should be based on "medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1521, 416.921. By not including any reference to the CCP tests, the ALJ fails to offer substantial evidence as to why rheumatoid arthritis should not be considered a medically determinable impairment. *See Pagan v. Chater*, 923 F.Supp. 547, 556 (S.D.N.Y. 1996) ("Although the ALJ is not required to reconcile every ambiguity and inconsistency of medical testimony, we cannot accept and unreasoned rejection of evidence that supports the plaintiff's position." (internal citations and quotations omitted)).

The ALJ concludes his analysis of medially determinable impairments by looking to the consultative examination Dr. Kogan. The ALJ includes Dr. Kogan's report almost word for word:

> Jacob Yacov Kogan, M.D., who conducted a consultative examination of the claimant on August 20, 2020, reported that the claimant had no synovitis in any of the joints of the upper and lower extremities bilaterally. The claimant had full range of motion of the cervical spine, lumbar spine, and throughout all the joints of the upper and lower extremities bilaterally. Motor strength was 5/5 in

---

[5] Additionally, the records with the results of the 2021 CCP tests appear to be incomplete, as they say "see note" in the section for the physician's interpretation and there is no attached note. This may trigger the ALJ's duty to develop the records. *See Beckman v. Comm'r of Soc. Sec.*, No. 21-CV-1492 (PKC), 2022 WL 4451041, at *4 (E.D.N.Y. Sept. 23, 2022) ("[T]he most obvious gaps in a record typically are akin to missing medical evidence, inconsistencies or vague opinions can also create a duty to further develop the record." (citing *Madera v. Comm'r of Soc. Sec.*, No. 20-CV-1459 (PKC), 2021 WL 4480656, at *6–8, 10 (E.D.N.Y. Sept. 30, 2021))).

15

>  the upper and lower extremities bilaterally. Fine finger movements were normal bilaterally. There was normal muscle bulk and tone in the upper and lower extremities bilaterally. Sensation was intact to light touch and pinprick in the upper and lower extremities bilaterally. The claimant had 2+ deep tendon reflexes. Her independent gait was normal and she could perform tandem successfully and stably. Dr. Kogan opined that on current examination, there were no range of motion deficits and no neurological deficits that limited sitting, standing, walking, bending, lifting, carrying, reaching or fine manipulation. He determined that such activities were mildly limited due to symptoms of generalized musculoskeletal pain (Exhibit 9F).

Tr. at 19.

Although he finds Dr. Kogan persuasive, the ALJ leaves out and fails to explain portions of Dr. Kogan's report that tend to support Alberta T.'s allegations. For example, the ALJ does not include Dr. Kogan's finding of "tenderness to palpitation involving the entire posterior torso and all four extremities diffusely." *Id.* at 926. The ALJ additionally leaves out Dr. Kogan's overall impression that Alberta T. has "[g]eneralized musculoskeletal pain and prior reported diagnoses of fibromyalgia and rheumatoid arthritis since 2008." *Id.* Finally, the ALJ quotes Dr. Kogan's finding that the activities of "sitting, standing, walking, bending, lifting, carrying, reaching, or finger manipulations" are "mildly limited due to symptoms of musculoskeletal pain," *id.*; but offers no explanation as to how the statement fits into his overall analysis that Alberta T. does not have any physical impairments, even non-severe ones.

Highlighting only portions of the report that support the ALJ's conclusion and failing to acknowledge or explain portions that support Plaintiff's contentions is not sufficient. *See Friend*, 2020 WL 2475642, at *5 ("The ALJ also improperly relied on Plaintiff's testimony when to do so supported the ALJ's decision but discounted it when it did not."); *see also Sheila Renee H. v. Kijakazi*, No. 3:21-cv-00944 (TOF), 2022 WL 4181723, at *7–8 (D. Conn. Sept. 13, 2022)

Case 3:23-cv-00754-VAB   Document 22   Filed 09/30/24   Page 17 of 20

(finding that an ALJ did not "cherry pick" because they "considered the bad as well as the good in the [medical] reports").

The ALJ focused on impairments that were not alleged by Alberta T., did not consider her probative and relevant CCP results, and selectively considered a consultative examination report. Consequently, to the extent that the ALJ actually determined that Alberta T.'s rheumatoid arthritis is not a medically determinable impairment, this conclusion is not supported by substantial evidence. *See Douglass v. Astrue*, 496 Fed. App. 154, 157 (2d Cir. 2012) ("This deficiency is compounded by the fact that the ALJ relied primarily on one-time consultative reports and failed to address substantial additional evidence in the record[.] . . . For these reasons, the ALJ failed to set forth the crucial factors in his determination with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.")

The failure to properly assess medically determinable impairments is not harmless error. But, because the ALJ concluded that Alberta T.'s alleged rheumatoid arthritis was not a medically determinable impairment, the ALJ did not—indeed, could not—consider her physical symptoms or assess the impairment when drafting the RCF. *See Santiago v. Saul*, No. 3:19-cv-1026 (MPS), 2020 WL 5511651 at *3 ("The ALJ's error in finding that [the Plaintiff's] anxiety was not a medically determinable impairment impacted the subsequent steps of the disability determination process because . . . he was not required to consider it in determining [the Plaintiff's] RFC."); *Cooper v. Comm'r of Soc. Sec.*, No. 17-CV-1058 (MJR), 2019 WL 1109573, at *5 (W.D.N.Y. Mar. 11, 2019) ("[An error in the determination of a medically determinable impairment] is significant because an ALJ may credit a claimant's statements about her

17

symptoms and functional limitations only if the impairment to which they relate is medically determinable."). Accordingly, the Court will thus remand for a new hearing on this issue.

### B. Weighing Physician Opinions

Alberta T. argues that the ALJ improperly relied on the opinions of Drs. Ghaly and Olsen and disregarded the opinion of Dr. Russolillo when considering her mental health impairments in Step Three.

The Commissioner argues that the ALJ made no error in his assessment.

The Court agrees.

"Under the new [SSA] regulations, '[a] survey of . . . cases . . . show[s] that while the treating physician's rule was modified, the essence of the rule remains the same, and the factors to be considered in weighing the various medical opinions in a given claimant's medical history are substantially similar.'" *Ting v. Comm'r of Soc. Sec.*, No. 23-CV-1241 (PKC), 2024 WL 815841, at *7 n.12 (E.D.N.Y. Feb. 27, 2024) (quoting *Acosta Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-502 (AJN) (KHP), 2021 WL 363682, at *9 (S.D.N.Y. Jan. 29, 2021), *report and recommendation adopted*, 2022 WL 717612 (S.D.N.Y. Mar. 10, 2022)) (citations omitted).

"[T]he ALJ must 'explain how he considered' both the supportability and consistency factors, as they are 'the most important factors.'" *Rama v. Acting Commissioner of Social Security*, No. 22-CV-6928 (JLC), 2023 WL 8379265, at *11 (S.D.N.Y. Dec. 5, 2023) (citing 20 C.F.R. §§ 404.1520c(b)(2), 416.1520c(b)(2)); *see also Russ v. Comm'r of Soc. Sec.*, 582 F. Supp. 3d 151, 160 (S.D.N.Y. 2022) ("The new regulations give most importance to two of the same factors previously considered to determine whether a treating doctor's opinion should be given controlling weight, i.e., the extent to which a treating physician's opinion is supported by well-accepted medical evidence and not inconsistent with the rest of the record.").

The ALJ explained that Dr. Russolillo's opinion was inconsistent with the rest of the record and treating physician's opinions. For example, Dr. Russolillo found that Alberta T. had significant difficulties with memory and comprehension. Tr. at 21. In contrast to Dr. Russolillo's findings, the ALJ noted that "the claimant's Chase Clinic behavioral health records repeatedly document intact memory." *Id.* at 21. The ALJ also noted that Alberta T.'s testimony demonstrated she could complete tasks requiring basic memory and comprehension skills like managing her finances and grocery shopping. *Id.* at 22 (" The claimant has reported that she drives and is able to manage her finances[.] . . . She grocery shops once a month[.] . . . Such evidence is persuasive that the claimant has no more than moderate limitations in understanding, remembering or applying information."). After reviewing the record, the ALJ reasonably concluded that Dr. Russolillo's opinion was inconsistent with the record and thus was less persuasive.

Alberta T. argues that the ALJ used the report of Drs. Olsen and Ghaly as "essentially controlling weight," which was inappropriate as Dr. Olsen and her preceptor Dr. Ghaly were internists, not mental health physicians. Plaintiff's Memo. at 17. The ALJ, however, properly considered Dr. Olsen's report in the context of the more extensive behavioral health records from APRN Daniels and Alberta T.'s own testimony. For example, the ALJ noted Dr. Olsen's opinion "that in areas of activities of daily living, the claimant had average functioning regarding taking care of personal hygiene and physical need as well as regarding using good judgment regarding safety and dangerous circumstances," *id.* at 21, an analysis consistent with Alberta T.'s own testimony of being able to drive and cook. *Id.* at 22.

Overall, the ALJ's conclusion regarding Alberta T.'s mental impairments in Step Three are supported by substantial evidence. *See Arias v. Kijakazi*, 623 F. Supp. 3d. 277, 295 (S.D.N.Y.

2022) ("[T]he ALJ properly evaluated and assigned varied weights to those opinions. At bottom, [the Plaintiff] asks this Court to reweigh the evidence. Because there is substantial evidence supporting the ALJ's decision, however, the Court may not do so.").

### C. Residual Functional Capacity Analysis

An ALJ is required to consider both severe and non-severe medically determinable impairments when creating the RFC. *See* 20 C.F.R. § 416.945(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' . . . when we assess your residual functional capacity."); *Parker-Grose v. Astrue*, 462 Fed. Appx. 16, 18 (2d. Cir. 2012) ("A[n] RFC determination must account for limitations imposed by both severe and nonsevere impairments."). But, given that the ALJ's determination that rheumatoid arthritis was not a medically determinable impairment is not supported by substantial evidence, the Court does not reach the parties' arguments as to the RFC. *See Santiago,* 2020 WL 5511651, at *3 ("I do not reach [the Plaintiff's] other arguments "because upon remand and after a de novo hearing, [the ALJ] shall review this matter in its entirety." (internal quotations and citations omitted)).

### IV. CONCLUSION

For the reasons explained above, Alberta T.'s motion is **GRANTED** and the Commissioner's motion is **DENIED**. The decision of the Commissioner is **VACATED** and **REMANDED** for rehearing and further proceedings in accordance with this Ruling and Order.

**SO ORDERED** at New Haven Connecticut, this 30th day of September, 2024.

/s/ Victor A. Bolden
Victor A. Bolden
United States District Judge
